UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JAMES BESIGNANO,                                  :
                                                  :
                         Plaintiff,               :
                                                  :        **OPINION AND ORDER**
            -against-                             :        12-CV-6123 (DLI)
                                                  :
CAROLYN W. COLVIN,[1]                             :
Commissioner of Social Security,                  :
                                                  :
                         Defendant.               :
------------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On March 5, 2009, Plaintiff James Besignano ("Plaintiff") filed an application for Social

Security disability insurance benefits ("DIB") under the Social Security Act (the "Act").  (*See*

Certified Administrative Record ("R."), Dkt. Entry No. 18 at 50-62.)  On July 16, 2009, the

application was denied and Plaintiff filed a written request for a hearing.  (R. 51-62, 283-88.)  On

April 4, 2011, Plaintiff appeared with counsel and testified at a hearing before Administrative

Law Judge Robert C. Dorf  (the "ALJ").  (R. 24-49.)  By a decision dated April 28, 2011, the

ALJ concluded Plaintiff was not disabled within the meaning of the Act.  (R. 10-24.)  On

October 11, 2012, the ALJ's decision became the Commissioner's final decision when the

Appeals Council denied Plaintiff's request for review.  (R. 1-6.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant

to 42 U.S.C. § 405(g).  (*See* Complaint ("Compl."), Dkt. Entry No. 1.)  The Commissioner

moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, seeking affirmation of the denial of benefits.  (*See* Mem. of Law in Supp. of Def.'s

Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 14.)  Plaintiff cross-moved for

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Carolyn W. Colvin shall be
substituted for Commissioner Michael J. Astrue as the defendant in this action.

judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 16.) For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is denied. Plaintiff's motion for remand is granted, for the limited purpose of obtaining clarification from the state agency consulting physician regarding Plaintiff's work restrictions and whether that clarification alters the conclusion that Plaintiff is not disabled.

## BACKGROUND

### A.      Non-Medical and Self-Reported Evidence

Plaintiff was born in 1964 and was 44 years old when he applied for DIB. (R. 50.) Plaintiff has a twelfth-grade education and worked as a firefighter from July 1988 to April 2008 with the New York City Fire Department ("FDNY"). (R. 110-11, 119, 123, 136-37.) Towards the end of his tenure with the FDNY, Plaintiff worked a light duty position, answering telephones and performing clerical tasks. (R. 44-45.) Plaintiff alleges that he is no longer able to perform light duty work because he must lie down "a few hours a day." (R. 45.) In April 2008, Plaintiff received a disability retirement from the FDNY, which noted that Plaintiff was not precluded from engaging "in a suitable occupation." (R. 185.) Plaintiff receives a monthly disability retirement pension of $6,600. (R. 36.)

Plaintiff filed the instant application in March 2009, alleging that he has been disabled since April 10, 2008 due to a tear in his left shoulder, right shoulder problems, back pain, pain in his left knee, nasal and respiratory problems, and anxiety and depression. (R. 118, 126, 128.) Plaintiff alleged that he could not "lift any weight without having severe pain." (R. 118.) He further alleged that he experienced "shortness of breath when walking or climbing stairs." (*Id.*)

His condition required him to "rest throughout the day." (*Id.*) Plaintiff previously filed a claim for DIB in 2008, which was denied and he did not appeal that decision. (R. 35-36.)

Plaintiff lives with his wife and three children. (R. 34-35.) Plaintiff cares for his children when his wife is at work. (R. 40.) Plaintiff is able to handle his own personal needs such as shampooing his hair, shaving, and buttoning clothing. (R. 37-38, 42.) Plaintiff testified that he has difficulty driving because of pain (R. 38), and is forgetful and easily irritated (R. 39-40.) Plaintiff spends his day reading the newspaper and watching television. (R. 41.)

**B.    Medical Evidence**

**1.    Medical Evidence prior to Alleged Onset Date (April 10, 2008)**

Prior to the alleged onset date, Plaintiff treated with physicians for a variety of orthopedic injuries. A MRI of his left shoulder dated March 29, 2006 showed a posterior/superior labral tear, with minimal posterior capsulolabral separation, mild anterior capsular thickening without evidence of Bankart tear, no evidence of rotator cuff tear, lobulated high signal proximal humeral lesion, and acromioclavicular stress reaction. (R. 236-37, 310-11, 322.)

On December 12, 2006, Plaintiff sustained a right shoulder injury. (R. 190, 220.) On May 21, 2007, Plaintiff underwent arthroscopic repair of a labral tear. (R. 196-98, 301-03.) Plaintiff continued to treat with Dr. Mark F. Sherman for right shoulder pain from January 2007 through October 2007. (R. 194-202.) An examination of Plaintiff revealed that his right shoulder had a normal range of motion. *Compare* Tr. 194 *with* American Medical Association, *Guides to the Evaluation of Permanent Impairment* pp. 42-44 (4th ed. 1994) (the "AMA Guides"). However, Dr. Sherman diagnosed Plaintiff with right shoulder pain post-surgery, prescribed over-the-counter pain medication, and concluded that Plaintiff was restricted to light duty work. (R. 194.)

On March 10, 2008, Dr. Basil Dalavagas, an orthopedic consultant, examined Plaintiff at the request of the FDNY. (R. 186-88, 304-06.) He reviewed Plaintiff's medical records and noted that Plaintiff's chief complaint was residual right shoulder pain. (R. 186-87.) On examination, his right shoulder exhibited average ranges of motion for extension, abduction, adduction, and internal and external rotation. *Compare* R. 187 *with* AMA Guides at 42-44. Dr. Dalavagas noted some pain and tenderness during the examination. (R. 187.) Dr. Dalavagas concluded that Plaintiff had significant residual pain and decreased range of motion of the right shoulder, with significant functional deficit for a right-handed person. (R. 188.) Dr. Dalavagas opined that Plaintiff was "permanently disabled for the performance of full fire duty." (*Id.*)

On March 17, 2008, Plaintiff complained of sinusitis and presented for a Computerized Tomography ("CT") scan of his paranasal sinuses. (R. 234.) The CT scan revealed sinus mucosal disease with sinal septal deviation to the left, and variations in the configuration of the drainage pathways which might predispose Plaintiff to recurrent episodes of inflammatory disease. (R. 234, 307.) On March 31, 2008, Plaintiff had a CT scan of his chest, which revealed nodules. (R. 239.)

On April 3, 2008, the FDNY medical board concluded, based on Dr. Dalavagas's report, that Plaintiff's December 13, 2006 right shoulder injury rendered him permanently disabled from full duty fire service. (R. 185.) The FDNY further noted that Plaintiff's accident disability retirement did not preclude him from engaging "in a suitable occupation." (*Id.*)

Around this time, Plaintiff filed his first application for DIB, which was denied. (R. 35-36.) He did not appeal the denial. (R. 36.)

2.      **Medical Evidence after the Alleged Onset Date (April 10, 2008)**

a.      **Physical Impairments**

Plaintiff continued to treat for his conditions after the alleged onset date.  From October 2008 through January 2009, Plaintiff treated with Dr. Michael Hearns for bilateral shoulder pain. (R. 226-42.)  On January 26, 2009, an MRI of his lumbar spine revealed mild diffuse disc bulge at L3-L4, slightly flattening the anterior thecal sac, mild left neural foraminal narrowing at L3-L4 and L4-L5, and a probable cyst in the right kidney.  (R. 232-33, 312-13, 343.)

On June 11, 2009, Plaintiff attended a consultative examination with Dr. Mahendra Misra.  (R. 252-59.)  Plaintiff's father drove him to the examination.  (R. 255.)  Plaintiff reported bilateral shoulder pain, back pain, and left knee pain, as well as anxiety and depression.  (R. 253-54.)  Plaintiff reported that he can handle his personal care needs, but cannot sit or stand continuously for more than a half hour, walk more than four blocks without resting, and lift more than five pounds.  (R. 255.)  On examination, Plaintiff had 5/5 bilateral grip strength.  (*Id*.)  He had normal gait and station when walking.  (R. 256.)  There was no evidence of any neurological motor or sensory deficit.  (*Id*.)  He exhibited normal range of motion.  (R. 252.)  The movement of his cervical and thoracolumbar spine was normal; however, his upper limbs had restricted shoulder joint movements.  (R. 256.)  There was no evidence of muscle atrophy.  (*Id*.)  He was in no acute distress during the examination.  (*Id*.)

Dr. Misra diagnosed Plaintiff with:  (1) lumbosacral diskogenic disease; (2) right shoulder status post-surgery for labral tear internal derangement; and (3) left shoulder joint labral tear, AC stress reaction, and internal derangement.  (*Id*.)  Dr. Misra noted that "[i]n his present state he will not be able to do tasks which require prolonged standing, sitting, walking, climbing, lifting, crouching, pulling, or pushing."  (R. 256-57.)  His prognosis was guarded.  (R. 257.)

On February 28, 2011, Dr. Charles DeMarco, an orthopedic surgeon, examined Plaintiff. (R. 320-24.) Plaintiff reported persistent and debilitating bilateral shoulder and lumbar spinal pain. (R. 322.) On examination, Plaintiff exhibited normal ranges of motion for his shoulders (R. 323.) The ranges of motion for his back and knees were less than normal. (*Id*.) Dr. DeMarco diagnosed him with: (1) impingement and instability of both shoulders; (2) medial plica of the left knee; (3) left knee instability; and (4) lumbar derangement with strain/sprain and radiculopathy. (*Id*.) Dr. DeMarco indicated that Plaintiff's only option would be revision surgical intervention of both shoulders, which Plaintiff declined. (*Id*.) Dr. DeMarco opined that Plaintiff could not "work in a competitive working environment." (*Id*.) Dr. DeMarco provided a lengthy commentary on Plaintiff's limitations:

> The patient for one-third of an eight-hour day, the patient cannot lift with limitation of not more than 10 pounds. Due to his significant injuries he has, so far one-third of an eight hour a day, the patient cannot lift more than 10 pounds and that is due to his significant pain and discomfort in both shoulders. The patient was unable to do any prolonged sitting due to the pain, spasm, and stiffness he has in his lumbar spine and the pain and stiffness he has in his left knee and cannot sit for more than 2-4 hours per day. The patient is also unable to stand or walk for more than one hour per day due to his significant pain and discomfort and degenerative arthritis he is being formed in his left knee as well as the pain and discomfort he has in his lumbar spine. The patient has significant restriction of mobility and lumbar radiculopathy. The patient cannot lift or carry more than five pounds for two-thirds of [a] full workday, again that is related to his severe pain and discomfort. The findings that he has in his both shoulders, he also had surgical intervention of the right shoulder, refractive to surgical treatment as well. These conditions are permanent in nature. The patient has significant functional loss of range of motion of both shoulders and both knees. The range of motion is measured by eye by observation and range of motion was a combination of active and passive range of motion. Due to these multiple injuries, the patient has difficulty to perform sedentary work, cannot stand or sit, cannot do any prolonged sitting due to the significant pain and spasm that he has in his lumbar spine. Also, the patient is using intermittent narcotic medication and that will interfere with his

cognition, also not allowing him to perform any sedentary tasks. The patient also because of the significant pain that he has and significant pain, spasm, and stiffness, he requires breaks every two hours to allow him to get up and get down and relieve his stiffness in his knees and lumbar spine.

(R. 323-24.)

On March 17, 2011, Dr. Hearns submitted a letter summarizing his treatment of the injuries Plaintiff sustained as a firefighter. (R. 340-45.) Plaintiff complained of bilateral shoulder pain, back pain, depression, and anxiety. (R. 340.) Dr. Hearns diagnosed Plaintiff with post traumatic stress disorder, status post right shoulder surgery, and internal derangement of the left shoulder and [herniated nucleus pulposes] of the lumbar spine with lumbar radiculopathy. (R. 345.) Dr. Hearns indicated that Plaintiff could stand/walk for less than two hours in an eight-hour day, could not sit for more than four hours, had difficulty climbing steps, and could lift/carry five and ten pound objects for two and one-half hours. (R. 340.) Dr. Hearns indicated that Plaintiff requires bed rest during the day, as well as frequent breaks. (R. 341.) Dr. Hearns opined that Plaintiff's sleeplessness and chronic fatigue prevent him from performing sedentary work. (*Id*.) Dr. Hearns opined that Plaintiff would need an average of two sick days per month and that he has environmental restrictions due to his physical limitations and sensitivity. (*Id*.) Dr. Hearns concluded that, in his opinion, Plaintiff is totally disabled. (R. 344.)

### b. Mental Impairments

After the alleged onset date, Plaintiff began treatment with Dr. Eric Peselow for mental impairments. (R. 243-51.) Plaintiff reported that he was often angry, expressed concern about his medical issues, had difficulty sleeping, had gained twenty pounds during the last year, and had marital conflicts. (R. 244.) He reported that he spent time on his boat, which was "very relaxing." (*Id*.) On March 18, 2011, Dr. Peselow diagnosed Plaintiff with major depressive

disorder, post-traumatic stress disorder, and generalized anxiety disorder. (R. 327.) Dr. Peslow opined that Plaintiff would be unable to interact appropriately with coworkers or to function in any job setting as Plaintiff's condition had improved little, despite numerous medication modifications. (*Id*.)

On June 26, 2009, Dr. Richard King, performed a consultative examination of Plaintiff. (R. 265-68.) Plaintiff reported anxiety and depression. (R. 265.) Upon examination, Dr. King noted:

> No acute distress. Fair rapport. Speech coherent and relevant. No thought disorder. Affect friendly, well modulated, not significantly anxious, depressed, or inappropriate. No hallucinations, delusions, suicidal ideation. No paranoid trends. Intellectual functioning in the average range. Able to make simple change such as one dollar minus 50 cents. Memory grossly intact, recalling 2/3 objects in 5 minutes. Identifies the president and the mayor. Can do 5 digits forward, 4 digits backward. He does adequately on proverbs and similarities. Insight and judgment are fair. Sensorium is clear. Oriented to time, place and person.
>
> The allegations of the claimant are consistent with the findings of the interview. Mental status exam consistent with the vocational history.

(R. 266.) Dr. King diagnosed Plaintiff with adjustment disorder of adult life, and a mild degree of anxiety and depression. (*Id*.) Dr. King noted that Plaintiff "may benefit from psychiatric treatment" and that his prognosis was fair. (R. 267.)

On July 15, 2009, a state agency psychiatrist, Dr. J. Kessel, reviewed Plaintiff's medical records. (R. 269-82; 289-92.) Dr. Kessel opined that Plaintiff could understand, remember, and carry out simple and detailed instructions, could concentrate for extended periods of time, could relate appropriately to coworkers and supervisors, and could adapt to changes in the work environment. (R. 291.)

**C.      Report from the Office of Inspector General ("OIG")**

In 2008, Plaintiff filed his initial application for DIB, which was referred to the OIG due to Plaintiff's "lack of credibility and suspected misrepresentation of loss of function, based on a consultative orthopedic examination performed by Dr. S. Calvino."[2]  (R. 14.)  On May 26, 2009, the OIG conducted surveillance of Plaintiff and submitted a report to the ALJ.  (R. 262-64.)  The report indicated that Plaintiff exited his home barefoot and walked to his car.  (R. 263.)  He bent over and removed "two cases of bottled Poland Spring water from the trunk in one movement." (*Id*.)  He walked up the steps of the house.  Shortly thereafter, he exited his home, walked to his car and opened and shut the door.  (*Id*.)  He walked to his mailbox and then went back into his home.  (*Id*.)  Twenty minutes later, he exited his home, got into his car, and drove to a deli.  (R. 264.)  He entered the deli, and shortly thereafter, exited carrying a bag.  (*Id*.)  He drove home, parked his car, and then confronted the investigator.  (*Id*.)

The investigator noted that:

> The subject was observed removing bottles of liquid from a vehicle without difficulty.  He held them at an angle.  In the left hand [he carried] the bottles of Poland Spring.  The twelve pack was carried in his right hand.
>
> The subject walked normally [and] did not exhibit any overt knee pain.  He had normal range of motion on all joints [and] appeared to carry weight in each hand without difficulty.  He did not appear to be short of breath when observed.

(*Id*.)  At his hearing, Plaintiff testified that the report correctly described his activities and he did not refute the report.  (R. 29, 31-33.)

---

[2]      In connection with Plaintiff's 2008 DIB application, Dr. S. Calvino conducted a consultative orthopedic examination and reported that Plaintiff's "gait and station were normal, his squat was full, he could rise from the chair without difficulty, grip and dexterity were full, range of motion of all joints was full, an x-ray of the right shoulder was normal, and claimant had no physical restrictions."  (R. 14.)

# DISCUSSION

## A.    Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314

(E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.      Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. § 404.1520(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

## C. The ALJ's Decision

On April 28, 2011, the ALJ issued a decision denying Plaintiff's claim. (R. 10-22.) The ALJ followed the five-step procedure in making his determination that Plaintiff could perform sedentary work, and therefore, was not disabled. (R. 10-12, 19.) At the first step, the ALJ determined that Plaintiff had not worked since April 10, 2008, the alleged onset date. (R. 12.) At the second step, the ALJ found the following severe impairments: degenerative disc disease and shoulder arthroscopic surgery. (*Id.*) The ALJ noted that Plaintiff's mental impairment of depression did not cause more than minimal limitation in his ability to perform basic mental work activities, and, therefore, was not severe. (*Id.*) At the third step, the ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.)

At the fourth step, the ALJ found that Plaintiff was unable to perform his past relevant work as a firefighter. (R. 18.) However, the ALJ found that Plaintiff retained the RFC to perform a full range of sedentary work as defined in 20 CFR § 404.1567(a). (R. 13-18.) The

ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (R. 14-18.) At the fifth step, the ALJ considered Plaintiff's age, finding that, at 43 years old, Plaintiff was a "younger individual." (R. 18.) As such, Plaintiff would be able to perform a broad range of sedentary work. (*Id.*) Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 18-19.)

**D.     Analysis**

The Commissioner moves for judgment on the pleadings, seeking affirmation of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine that Plaintiff was not disabled and that the factual findings are supported by substantial evidence. (*See generally* Def. Mem.; Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Reply Mem."), Dkt. Entry No. 17.) Plaintiff cross-moves for judgment on the pleadings, or, in the alternative, remand, contending the ALJ failed to properly: (1) apply the treating physician rule in evaluating the RFC assessments prepared by Drs. Hearn and DeMarco as their assessments were based on clinical findings; (2) apply the treating physician rule to Dr. Peselow's evaluation of the severity of Plaintiff's mental impairments; and (3) evaluate Plaintiff's credibility by assigning improper weight to the report from the OIG. (*See generally* Pl. Mem.; Reply Mem. of Law in Further Supp. of Pl. Mem. ("Pl. Reply Mem."); Dkt. Entry No. 21.) The parties do not dispute the ALJ's analysis at steps one and three.

**1.     ALJ's Analysis of Severity of Mental Impairment**

Plaintiff contends that the ALJ erred at step two by ruling that Plaintiff's mental impairment of depression was not severe. (*See* Pl. Mem. at 22.) To evaluate the severity of Plaintiff's depression, the ALJ reviewed the record to determine whether Plaintiff had

established the criteria for a mental disorder under Listing 12.00C. In particular, he reviewed the record for any evidence of impairment of the four functional areas assessed in Listing 12.00C: daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. The ALJ found that Plaintiff had a mild limitation with respect to the first three functional areas. (R. 12-13.) The ALJ found no evidence of the fourth functional area as there was no evidence that Plaintiff suffered from any episodes of decompensation. (R. 13.) The ALJ reached this result by reviewing the record as a whole, including Plaintiff's testimony as to his daily activities, Plaintiff's statements to various treating and examining physicians, Plaintiff's DIB application, and medical evidence.

Although not expressly stated in his analysis at step two, in evaluating the severity of the mental impairment, it is clear that the ALJ gave little weight to the opinion of treating psychiatrist, Dr. Peselow (R. 12-13), who found that Plaintiff suffered from marked limitations in the functional areas of Listing 12.00C (R. 327). Notably, in connection with his analysis of Plaintiff's RFC, the ALJ explained that he gave controlling weight to the state agency psychological consultant and state agency reviewing psychiatrist, because their opinions as to the severity of Plaintiff's mental impairment were supported by the record as a whole and not based solely on Plaintiff's subjective complaints. (R. 17.) There is no need to remand for an explicit application of the treating-physician rule at step two, when the ALJ did so elsewhere in the decision as the ALJ would reach the same conclusion regarding the impact of Plaintiff's mental impairment on his ability to work. The Second Circuit has explained that, "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule as the

medical record that the ALJ overlooked would not have altered the ALJ's disability determination) (quoting *Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987)); *Reices-Colon v. Astrue*, 2013 WL 1831669, at *1 (2d Cir. May 2, 2013) (summary order) (dicta finding harmless error where the ALJ failed to address two of plaintiff's numerous medical conditions at step two as the ALJ specifically considered those conditions during the subsequent steps).

Furthermore, the ALJ's application of the treating physician rule was appropriate. With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii)

the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ's application of the treating physician rule as to the severity of Plaintiff's mental impairment is supported by the substantial evidence in the record. At the request of the state agency, Dr. King examined Plaintiff and opined that Plaintiff's mental impairment was not severe and that his prognosis was fair. (R. 265-68.) Shortly thereafter, the state agency reviewing psychiatrist, Dr. Kessel, reviewed the record and opined that there was "no indication of significant mental limitations in his overall functioning." (R. 291.) The ALJ correctly noted that these opinions are supported by Plaintiff's statements as to his daily activities. (R. 35-38, 40-42, 244, 291.) ALJ's are permitted to give controlling weight to the opinions of examining or consulting physicians when those opinions are supported by the substantial evidence. *See Oliphant v. Astrue*, 2012 WL 3541820, at *15 (E.D.N.Y. Aug. 14, 2012) ("[U]nder the Regulations, opinions of non-treating and non-examining doctors can override those of treating doctors as long as they are supported by evidence in the record.") (citing *Schisler v. Sullivan*, 3 F. 3d 563, 568 (2d Cir. 1993)). To the extent that Plaintiff has stated that his purported mental impairment restricts his ability to function, the ALJ properly discredited Plaintiff's subjective complaints, as set forth in greater detail below. Accordingly, the Commissioner's findings at step two are affirmed.

### 2. Plaintiff's Credibility

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order) (citing *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979)). However, the ALJ is

afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order)).  In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations.  *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).  First, the ALJ must consider whether there is a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. § 404.1529(b); S.S.R. 96-7p.  Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work.  20 C.F.R. § 404.1529(c).  When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors:  1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief."

*Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

Turning to the instant action, the ALJ found that Plaintiff's "credibility has been destroyed." (R. 17.) In reaching this conclusion, the ALJ discussed the content of the OIG video that showed Plaintiff easily lifting two cases of bottled water, walking up and down stairs without any struggle or perceived pain, and driving, among other activities. (R. 14-15.) The ALJ indicated that he brought up the subject of that video at the beginning of Plaintiff's hearing and that Plaintiff did not deny the actions recorded in the video or seek to argue against admission of the video and the related report. (*Id.*) The ALJ noted that, in spite of the video, Plaintiff testified that he could not lift or carry more than one gallon of water and that he could not walk for more than ten minutes. (R. 15.) The ALJ further noted that the OIG conducted its surveillance of Plaintiff as part of an investigation into Plaintiff's first application, which the Commissioner suspected was fraudulently filed. (R. 14.) The ALJ concluded that Plaintiff had demonstrated that he was capable of a greater level of activity than what he reported. (R. 18.) Indeed, the reports of Dr. Peselow, Plaintiff's treating psychiatrist, indicate that Plaintiff reported spending time on his boat, which he found "very relaxing." (R. 244.) Steering and otherwise handling a boat requires a great deal of physical exertion and further supports the ALJ's findings.

The ALJ's credibility determination is supported by substantial evidence in the record. The ALJ correctly noted that the OIG video demonstrated that Plaintiff was able to lift more than what he reported to physicians. Plaintiff also was able to ambulate fluidly with no signs of distress for longer periods of time than he reported to physicians. Plaintiff's actions while under surveillance are consistent with the findings of the state consulting and reviewing examiners.

Plaintiff contends that the ALJ's credibility determination is flawed because the ALJ relies on the OIG report, which, in turn, refers to a report from a state examining physician from Plaintiff's earlier DIB application, which was denied. The physician's report is not in the record in this case and Plaintiff argues that the absence of the physician's report from the record in this case constitutes a "startling" due process violation. (Pl. Mem. at 23.)

Upon review of the record, the Court finds that there was no due process violation. First, the OIG report summarizes Plaintiff's activity, as observed and videotaped by the OIG investigator. At the hearing, Plaintiff's counsel stated that there was no need to show the OIG video as the OIG report accurately described the content of the videotape. Neither Plaintiff nor his attorney challenged the admissibility of the OIG report or its conclusions. (R. 26-29, 31-33.) Second, the ALJ did not rely on the physician's report in reaching his conclusion as to credibility; rather, the ALJ mentioned the existence of that report as background as to why the OIG commenced an investigation. (R. 14.) Finally, Plaintiff was aware of the existence of the physician's report throughout the litigation of this application for DIB as that report is from Plaintiff's earlier DIB application, yet Plaintiff never objected to its absence from the record in this case until now.

Plaintiff also contends that the ALJ's credibility determination is flawed because the ALJ relied on a short video to conclude that Plaintiff could perform sedentary work when a video

revealing a brief period of physical activity is not indicative of whether Plaintiff could perform an entire shift of sedentary work. (Pl. Mem. at 23-25.) Generally, this argument has some merit as other courts have recognized that a claimant's ability to perform the "mundane tasks of life . . . do[es] not necessarily indicate that [a claimant] is able to perform a full day of sedentary work." *Martin v. Astrue*, 2009 WL 2356118, at *12 (S.D.N.Y. July 30, 2009). However, in this case, the ALJ correctly noted that Plaintiff's testimony as to his abilities is in direct conflict with his abilities as captured in the OIG video and report which show far more strenuous physical activity than would be required of someone performing sedentary work. Under these circumstances, the ALJ's credibility determination was supported by the substantial evidence in the record.

### 3. ALJ's RFC Analysis

Plaintiff asserts that the ALJ erred in giving less than controlling weight to the opinions of Drs. Hearns and DeMarco because their opinions are supported by objective clinical tests, and are consistent with the medical evidence as a whole. Additionally, Plaintiff asserts that the ALJ improperly relied on the opinion of examining physician Dr. Misra, as Dr. Misra's report provided further support for the findings of Drs. Hearns and DeMarco.

The ALJ did not err in assigning less weight to the opinions of Drs. Hearns and DeMarco. Their opinions as to Plaintiff's abilities, in particular Dr. DeMarco's February 28, 2011 report, are grounded in Plaintiff's subjective complaints regarding pain, persistence, and pace. (R. 323-24, 340-45.) As the Court previously noted, the ALJ did not err in finding that Plaintiff's credibility was "destroyed." Thus, any medical reports premised on his exaggerated complaints may be discredited as well. Moreover, without any knowledge of Plaintiff's DIB application, and thus, no bias towards either party in this action, the FDNY's disability panel noted that Plaintiff's disability from full fire duty did not preclude him from engaging in "a suitable

occupation." (R. 185.) For these reasons, the Court concludes that the ALJ did not err in his application of the treating physician rule.

However, Plaintiff correctly notes that there was no other medical evidence in the record to support a finding that Plaintiff is able to perform sedentary work over the course of a typical work day. The state examining physician, Dr. Misra, did not complete a RFC assessment of Plaintiff's abilities. (R. 253-57.) Dr. Misra opined that Plaintiff's physical impairment was "guarded" and Plaintiff would "not be able to do tasks which require prolonged standing, sitting, walking, climbing, lifting, crouching, pulling, or pushing." (R. 257.) Sedentary work is defined as involving:

> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). At the very least, sedentary work appears to involve "prolonged sitting." Without further guidance from Dr. Misra as to his definition of "prolonged sitting" or more specifically, an RFC assessment of Plaintiff's work restrictions, this Court cannot sustain the ALJ's RFC finding as there is insufficient medical evidence on this isolated issue to support the ALJ's conclusion.

Accordingly, the Court remands this action for further proceedings solely to obtain clarification from Dr. Misra regarding Plaintiff's specific work restrictions at the time of his examination. Upon receipt of that report, the ALJ is directed to re-evaluate Plaintiff's RFC, and determine, upon such re-evaluation, whether it alters his conclusion that Plaintiff is not disabled.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is denied. Plaintiff's motion for remand is granted, for the limited purpose of obtaining clarification from the state agency consulting physician regarding Plaintiff's work restrictions and whether that clarification alters the conclusion that Plaintiff is not disabled. Accordingly, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed, in part, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

SO ORDERED.

Dated: Brooklyn, New York
        August 14, 2014

                                    _____/s/_____
                                            DORA L. IRIZARRY
                                        United States District Judge